UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**CHRISTOPHER SLAGHT, JEFFREY
MEGIE, JR** and **STEVEN SMITH**,
individually and on behalf of all similarly
situated persons,

     Plaintiffs,

v.                                                                    Case: 2:16-cv-10159-MFL-DRG
                                                                         Hon. Matthew F. Leitman

**REX PERFORMANCE PRODUCTS,
LLC,**
f/k/a **MICHIGAN FOAM AND
FABRICATION,**
a Michigan Limited Liability Company**,**
**MAXWELL MORGAN, LLC**, a Nebraska
Limited Liability Company, **DON TATE**,
an individual, **REX HANSEN**, an
individual, and
**JOHN BALLINGER**, an individual, jointly
and severally,

     Defendants.

_____/

**PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF SETTLEMENT**

Plaintiffs Christopher Slaght, Jeffrey Megie, Jr., and Steven Smith

("Plaintiff") state as follows for their Unopposed Motion for Final Approval of

Settlement:

1.     On January 18, 2016, Plaintiffs filed a putative class action lawsuit

against Defendants Rex Performance Products, LLC, f/k/a Michigan Foam and

Fabrication, Maxwell Morgan, LLC, Don Tate, Rex Hansen, and John Ballinger

(collectively "Defendants") alleging they violated the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §201, *et seq*. and for breach of contract for failure to pay compensation for all time worked.

2.     After filing a Motion for Conditional FLSA Certification, Plaintiffs and Defendants agreed to engage in extensive settlement discussions and discovery to determine whether a consensual resolution for the litigation could be reached.

3.     Plaintiffs and Defendants subsequently reached a settlement agreement that provides, among other things, for the creation of a Gross Settlement Fund of $125,000 to pay the claims of Plaintiffs, members of the settlement class, Class Counsel, and litigation expenses in exchange for dismissal of the litigation with prejudice and certain releases from Plaintiff and the proposed class to Defendants. In addition, Plaintiffs and Defendants have agreed an Enhanced Gross Settlement Amount, in which the Gross Settlement Amount will be increased to a total of $156,250.000 (plus applicable interest) if the Gross Settlement Amount is not paid into an escrow account controlled by Defendants' Class Counsel by July 15, 2017.   The Defendants made the payments within the time provided and therefore, the Enhanced Gross Settlement Amount does not apply.

4.     Defendants have stipulated to certification of the class under Federal Rule of Civil Procedure 23 for purposes of the settlement only.

5.      The settlement represents a fair, reasonable, and adequate resolution of this dispute, and all relevant factors warrant final approval.

6.      The class notices satisfied the requirements of Rule 23 and due Process.

7.      The Rule 23(a) and (b)(3) class certification factors are met.

8.      The approved notice was sent to the class members on September 27, 2017 and the reaction of the class can only be described as positive. To date, only 2 of the 199 Class Members have requested to opt-out of the Settlement, and zero objections have been received. If any opt-outs/objections are received after the filing of this Motion and within the November 13, 2017 deadline, Class Counsel will file supplemental briefing identifying said opt-outs and objections.

9.      Plaintiffs' request for incentive awards and Class Counsel's attorneys' fees and reimbursement of litigation costs are reasonable and should be granted final approval.

WHEREFORE, there being no just cause otherwise, Plaintiffs Christopher Slaght, Jeffrey Megie, Jr. and Steven Smith respectfully request that the Court enter the proposed Final Approval Order, attached hereto as ***Exhibit A***, during the November 20, 2017 hearing.

Dated:  November 6, 2017

Respectfully submitted,
SOMMERS SCHWARTZ, P.C.

/s/*Kevin Stoops*
Kevin Stoops (964371)
Jesse L. Young (P72614)
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com
jyoung@sommerspc.com

/s/*Brian Delekta*
Brian Delekta (P73052)
Delekta & Delekta P.C.
80880 Main St., Box 595
Memphis, MI 48041
810-392-3834
brian@delektalaw.com

*Class Counsel*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**CHRISTOPHER SLAGHT, JEFFREY MEGIE, JR** and **STEVEN SMITH**,
individually and on behalf of all similarly
situated persons,

      Plaintiffs,

v.

                                 Case: 2:16-cv-10159-MFL-DRG
                                 Hon. Matthew F. Leitman

**REX PERFORMANCE PRODUCTS, LLC,**
f/k/a **MICHIGAN FOAM AND FABRICATION,**
a Michigan Limited Liability Company**,**
**MAXWELL MORGAN, LLC**, a Nebraska
Limited Liability Company, **DON TATE,**
an individual, **REX HANSEN,** an
individual, and
**JOHN BALLINGER**, an individual, jointly
and severally,

      Defendants.

_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**

      Plaintiffs Christopher Slaght, Jeffrey Megie, Jr. and Steven Smith

("Plaintiffs") respectfully submit this memorandum of law in support of their

unopposed motion for final approval of their settlement with Defendants.

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................... iv

I.     INTRODUCTION .................................................................2

II.    THE SETTLEMENT...........................................................3

     A.    Settlement Class .................................................................3

     B.    Settlement Fund..................................................................4

     C.    Additional Awards ............................................................4

     D.    Notice of Settlement and Reacting of the Class.................4

     E.    Settlement Fund Claims ....................................................5

III.   LAW AND ARGUMENT.....................................................6

     A.    Final Approval of the Settlement is Appropriate ...............6

          1.    The "arm's length" factor ........................................9

          2.    The complexity/delay/expense factor ....................10

          3.    The discovery/evidence factor ...............................10

          4.    The likelihood of success factor ............................11

          5.    The judgment of counsel factor ..............................13

          6.    The fairness factor..................................................13

          7.    The public interest factor .......................................15

     B.    The Reaction of the Class Members Supports Approval.................15

     C.    The Court Should Grant Class Certification for Settlement Purposes............................................................16

1.    The Rule 23(a) factors are met.................................................17

    a.    The Class is sufficiently numerous, and joinder is
        impracticable..................................................................17

    b.    The Class shares common issues of law and fact.........18

    c.    Mr. Slaght, Mr. Megie Jr., and Mr. Smith's
        claims are typical of the Class ......................................20

    d.    Mr. Slaght, Mr. Megie, Jr, and Mr. Smith and
        Class Counsel are adequate representatives .................21

2.    The Rule 23(b)(3) factors are met..........................................22

    a.    A class action is a superior method of
        adjudicating this dispute ...............................................22

    b.    Common questions of law or fact predominate
        over questions affecting only individuals.....................25

D.    Class Counsel's Attorneys' Fees Are Reasonable ...........................25

    1.    The Court Should Adopt the Percentage Approach to
        Award Fees. .........................................................................26

    2.    The *Ramey* Facts Weigh in Favor of Awarding the
        Requested Fees......................................................................27

        a.    The settlement provides a substantial benefit to
            the class.........................................................................28

        b.    Society's stake in rewarding attorneys who
            produce the benefits to the class in order to
            maintain an incentive to others .....................................29

        c.    Class Counsel undertook considerable risk of
            nonpayment in litigating this case on a
            contingency basis..........................................................31

    d.  The lodestar cross-check supports approval of the requested fees..............................................................32

    e.  The complexity of this litigation weighs in favor of the requested award ................................................35

    f.  Class counsel's skill supports approval.......................36

    g.  The requested fee award is comparable to fee awards in similar cases. ...............................................37

  E.  Class Counsel's Request for Reimbursement of Necessary Expenses Should Be Approved ........................................................37

  F.  The Settlement Also Warrants Approval Under FLSA ...................39

IV.  CONCLUSION..............................................................................41

# Table of Authorities

## Cases

*Afro Am. Patrolmens League v. Duck*, 503 F.2d 294 (6th Cir. 1974) .................. 18

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)........................ 16, 22, 23, 24

*Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 18838 (S.D. Ohio Feb. 28, 2008)............................................................................................ 34

*Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728; 101 S. Ct. 1437 (1981)...................................................................................... 39

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) ............................... 22, 25

*Bessey v. Packerland Plainwell, Inc.*, 2007 U.S. Dist. LEXIS 79606 (W.D. Mich. October 26, 2007) .......................................................... 37

*Boeing Co. v. Van Gemert*, 444 U.S. 472; 100 S.Ct. 745 (1980) .......................... 14

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) ........................................... 26

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 65 S. Ct. 895 (1945) ..................... 39

*Clark Equip. Co. v. Allied Industrial Workers,* 803 F.2d 878 (6th Cir. 1986)............................................................................................... 6, 7, 11

*Collins v. Sanderson Farms, Inc.,* 568 F.Supp.2d 714 (E.D.La.2008)................. 39

*Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 U.S. Dist. LEXIS 7829 (S.D. Ohio Jan. 26, 2011) .................................................................. 26

*Coulter-Owens v. Rodale, Inc.*, 2016 U.S. Dist. LEXIS 134243 (E.D. Mich. Sept. 29, 2016) .................................................................... 29, 33

*Crawford v. TRW Auto. U.S. LLC,* 2007 U.S. Dist. LEXIS 19946 (E.D. Mich. Mar. 21, 2007)................................................................... 18, 40

*Daffin v. Ford Motor Co.,* 458 F.3d 549 (6th Cir. 2006)....................................... 23

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) ......................................................................... 36

*Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410 (6th Cir. 1998)....................... 19

*Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016).............. 14

*General Tel. Co. v. EEOC*, 446 U.S. 318 (1980) ................................................... 17

*Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887 (S.D. Ohio June 24, 2011).............................................................................. 29, 32, 35

*Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610 (6th Cir. 2007) .............................. 30

*Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir. 1992)........................ 8

*In re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir. 1996) ............. 17, 20

*In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002) ...................................................................................................... 38

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007) ................................................................................... 26, 27, 32, 33

*In re Cardizem CD Antitrust Litigation,* 218 F.R.D. 508 (E.D. Mich. 2003) ................................................................................................ passim

*In re Delphi Corp. Sec.*, 248 F.R.D. 483 (E.D. Mich. 2008)......................... 26, 29

*In re Packaged Ice Antitrust Litig.*, 2012 U.S. Dist. LEXIS 162459 (E.D. Mich. Nov. 13, 2012)........................................................................... 38

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) .............................................................. 26, 33

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003)........................ 37

*In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 U.S. Dist. LEXIS 20440 (E.D. Mich. Dec. 20, 1996) ................................................... 26

*In re S. Ohio Corr. Facility*, 173 F.R.D. 205 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir. 2001) ........................... 37

*In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D. N.J. 2001)................................................................................................. 37

*In re Sulzer Orthopedics, Inc.*, 398 F.3d 778 (6th Cir. 2005)............................... 26

*In re Whirlpool Corp. Front–Loading Washer Products Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013) ................................................................ 18

*IUE-CWA v. General Motors Corp.,* 238 F.R.D. 583 (E.D. Mich. 2006) ...... passim

*Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994 (S.D. Ohio May 30, 2012) .......................................................................... 30

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008) ........... 10

*Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982) .................................................................................................. 39

*McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730 (6th Cir. 2002) .................... 33

*New York State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. 226 (E.D. Mich. 2016) .................................................................................... 34

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .......................................... 24

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618 (6th Cir. 2011) .................................................................. 23

*Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007) ............................................................................................ 18, 23

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) .................................................................................................. 26

*Reese v. CNH America LLC,* 227 F.R.D. 483 (E.D. Mich. 2005) ........................ 18

*Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009 (W.D. Mich. 1987) .................................................................................................. 18

*Rotuna v. W. Customer Mgmt. Grp.*, LLC, 2010 U.S. Dist. LEXIS 58912 (N.D. Ohio June 15, 2010) .............................................................. 37

*Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir. 1976) ............... 17, 20, 21

*Smillie v. Park Chem. Co.*, 710 F. 2d 271 (6th Cir. 1983)..................................... 36

*Snook v. Valley Ob-Gyn Clinic, P.C.*, 2015 U.S. Dist. LEXIS 2989 (E.D. Mich. Jan. 12, 2015) .......................................................................... 28

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) .................. 17, 19

*Steiner v. Fruehauf Corp.,* 121 F.R.D. 304 (E.D. Mich. 1988)...................... 6, 7, 8

*Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188 (6th Cir. 1988) ................... 23

*UAW v. General Motors Corp.,* 497 F.3d 615 (6th Cir. 2007)..................... 6, 8, 11

*Williams v. Vukovich,* 720 F.2d 909 (6th Cir. 1983) .......................................... 7, 8

## Other Authorities

29 U.S.C. § 206 ....................................................................................... 39, 40

29 U.S.C. § 207 ....................................................................................... 39, 40

29 U.S.C. § 216(b) ......................................................................................... 39

3 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 14.03
    (3d ed. 1992) ............................................................................................ 33

7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal
    Practice and Procedure § 1779 (3rd Ed. 2010)................................... 23

Conte & Newberg, 4 *Newberg on Class Actions*, § 11:22 (4th Ed. 2002) ........... 16

*Manual for Complex Litigation* (Fourth) § 21.612 ................................. 16

## Rules

Fed. R. Civ. P. 23(a)(2)............................................................................... 18

Fed. R. Civ. P. 23(a)(4)............................................................................... 21

Fed. R. Civ. P. 23(b) ........................................................................... passim

Fed. R. Civ. P. 23(b)(3)....................................................................... passim

Fed. R. Civ. P. 23(e).......................................................................................... 6

Fed. R. Civ. P. 23(h) .................................................................................. 3, 25

Fed. R. Civ. P. 30(b)(6)................................................................................ 10

Fed. R. Civ. P. 54(d)(2).............................................................................. 3, 25

## I.   __INTRODUCTION__

On January 18, 2016, Plaintiffs filed a collective/class action lawsuit (the "Litigation") against the Defendants Rex Performance Products, LLC f/k/a Michigan Foam and Fabrication, Maxwell Morgan, LLC, Don Tate, Rex Hansen, and John Ballinger (collectively "Defendants"), alleging that they violated the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §201, *et seq.* and breach of contract for failure to pay compensation for all timed work by requiring their employees to show up between 5 to 15 minutes early for work for which they were not paid in violation of FLSA (the "Litigation").

In July 2017, the parties reached a class-wide settlement of $125,000 (the "Gross Settlement Amount"), which the Court preliminarily approved on September 15, 2017. (Doc. 26). The Settlement secures significant monetary compensation for the Named Plaintiffs, and the 196 other class members who elected to remain in the Settlement after receiving Settlement Notice.  Of the 199 Class Members, only 2 have submitted opt-out forms requesting to exclude themselves from the Settlement. Further, zero objections have been made to the Settlement. As these statistics demonstrate, and as described more fully below, the Settlement is fair, reasonable, and adequate and, accordingly, Plaintiffs respectfully request that the Court grant this Motion for Final Settlement Approval so that the settlement funds may be distributed.

Plaintiffs also requests that the Court approve the parties' agreement to grant the named Plaintiffs a total of $10,000.00 as an incentive award to be split equally between the three Named Plaintiffs. Further, as compensation for their work and the results obtained in this case, and pursuant to Rules 23(h) and 54(d)(2), Plaintiffs respectfully request the Court to award Class Counsels' attorneys' fees in the total amount of $41,666.67 and costs not to exceed $10,000.72. As explained in more detail below, the requested awards are consistent with the parties' Settlement Agreement, the fee agreement between Plaintiffs and Class Counsel, and opinions from courts within this District and Circuit. The fee award fairly and reasonably compensates Class Counsel for its efforts to efficiently investigate and prosecute the Plaintiffs' claims, taking into account the quality, nature, and extent of Class Counsel's efforts in this complex case, the results achieved, the risk of non-payment, and the benefits to the Plaintiffs, class members, and judicial system for achieving the result through settlement.

## II.   <u>THE SETTLEMENT</u>

**A.   Settlement Class.**

The settlement established a settlement Class for this matter defined as:

*All individuals who worked as Shift Leaders, Technicians, Laminators, Hi-Lo Drivers, General Labors, and Operators, during the Settlement Period of November 1, 2013 to May 1, 2016.*

**B.     Settlement Fund.**

The settlement established a $125,000.00 cash settlement fund (the "Settlement Fund").   The Settlement Class consists of 199 Class Members including the three Named Plaintiffs.   The parties through a comprehensive evaluation of each Class Member's pay records during the class period were able to identify the amount of money allegedly owed to each Class Member for off-the-clock time worked by the respective job classifications (Shift leads, Technicians, Operators, Laminators, Hi Lo Drivers and General Laborers) during the class period.

**C.     Additional Awards.**

The settlement also provided for an incentive award to the named Plaintiffs in the amount of $10,000.00 to be split equally and for reasonable attorneys' fees in the amount of $41,666.67 and costs not to exceed $10,000.72 to compensate Class Counsel for all attorneys' fees and litigation expenses through final approval.

**D.     Notice of Settlement and Reaction of the Class.**

Consistent with the Court's Preliminary Approval Order, the Settlement Administrator mailed the court-authorized settlement notice to all one hundred ninety-nine (199) Class Members, on September 27, 2017. (*See **Exhibit B***, Declaration of Settlement Administrator Case Manager, Stephen Gomez, at ¶¶ 5-8).  The settlement notice provided the Class members with information about the

4

terms of the settlement, the plan for allocation, the allocation of the Named Plaintiffs' incentive award, the allocation of attorneys' fees and costs, their right to object to or exclude themselves from the settlement, and information regarding the date, time, and place of the final fairness hearing. (Doc. 26 at Pg ID 308-309; ***Exhibit B***, Gomez Decl. at ¶ 5).

The reaction of the class can only be described as positive. Of the 199 eligible settlement class members only two (2) have opted out from the Settlement. Importantly, there are zero (0) objections.  (***Exhibit B***, Gomez Decl. at ¶¶ 10-11).

Should the Court grant this motion, the Settlement Administrator will be responsible for calculation of the settlement checks, issuance and mailing of the settlement checks to Class members, calculating and remitting all required payroll taxes to the IRS and state government entities, and calculating, issuing, and mailing IRS Form W-2s and IRS Form 1099s to the participating settlement Class members, and remitting any unclaimed funds to Defendants. (Doc. 26, Settlement Agreement at ¶¶ 11; ***Exhibit B***, Gomez Decl. at ¶ 15).

## E.    Settlement Fund Claims.

Consistent with the Court's Preliminary Approval Order, Class Members who do not opt out by November 13, 2017, will be guaranteed to receive their pro rata share of the settlement proceeds based on the calculation of their hourly rate/overtime rate and amount of unpaid time he or she had. ("Settlement Share").

## III.   LAW AND ARGUMENT

### A.   Final Approval of the Settlement is Appropriate

The law favors the settlement of class action litigation.  *See UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *IUE-CWA v. General Motors Corp.,* 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions"); and *Steiner v. Fruehauf Corp.,* 121 F.R.D. 304, 305 (E.D. Mich. 1988) ("case law favors the voluntary settlement of class actions"). However, "[t]he claims, issues, or defenses of a certified class may be settled... only with the court's approval." Fed. R. Civ. P. 23(e).

To warrant district court approval, a class action settlement must be "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2); *see also UAW*, 497 F.3d at 631 ("Before approving a settlement, the district court must conclude that it is fair, reasonable and adequate."); *In re Cardizem CD Antitrust Litigation,* 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citations omitted) ("In deciding whether to grant final approval of the Proposed Settlement, this Court must determine, after holding a fairness hearing, whether the settlement is fair, adequate and reasonable").

"The evaluation and approval of a class settlement is committed to the sound discretion of the district court." *IUE-CWA,* 238 F.R.D. at 594, citing *Clark Equip. Co. v. Allied Industrial Workers,* 803 F.2d 878, 880 (6th Cir. 1986).  The district

court "should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable and adequate.'" *IUE-CWA,* 238 F.R.D. at 593.

A district court's "role in passing upon the propriety of a class action settlement is limited to a determination of whether the terms proposed are fair and reasonable to those affected." *Steiner*, 121 F.R.D. at 305 (*citing Williams v. Vukovich,* 720 F.2d 909 (6th Cir. 1983)). The district court's evaluation of a class action settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co.,* 803 F.2d at 880 (citation omitted); *IUE-CWA,* 238 F.R.D. at 594. In assessing a proposed settlement, the district court "should not substitute its judgment for that of the parties." *Steiner,* 121 F.R.D. at 306; *see also IUE-CWA,* 238 F.R.D. at 594 (citations and quotations marks omitted) (the court "must respect the parties' compromise" and "may not substitute his or her judgment for that of the litigants and their counsel").

The Sixth Circuit has identified seven factors that "guide the inquiry" undertaken by the district court:

(1) The risk of fraud or collusion;
(2) the complexity, expense and likely duration of the litigation;

    (3) the amount of discovery engaged in by the parties;
    (4) the likelihood of success on the merits;
    (5) the opinions of class counsel and class representatives;
    (6) the reaction of absent class members; and
    (7) the public interest.

*UAW*, 497 F.3d at 631 (*citing Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992)) and *Williams*, 720 F.2d at 922-23 (6th Cir. 1983); *see also IUE-CWA,* 238 F.R.D. at 594; *Cardizem*, 218 F.R.D. at 522; and *Steiner,* 121 F.R.D. at 305-06.  In considering the seven factors, the district court may choose to "consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case."  *IUE-CWA,* 238 F.R.D. at 594-95 (*citing Granada*, 962 F.2d at 1205-06).

Application of these factors to this case demonstrates that the proposed settlement is fair, adequate, and reasonable.  The Settlement in this case provides significant benefits to the Class, as the putative Class members were given an opportunity to make a claim from the Settlement Fund. Plaintiff and Class Counsel believe the Plaintiffs' claims are strong, but they also know Defendants denied the material allegations of the Complaint and raised several legal defenses, any of which, if successful, would result in Plaintiffs and the Class receiving no payment whatsoever. Accounting for these realities, and recognizing the risks involved in any litigation, the Settlement represents an excellent result for the Class.

### 1. The "arm's length" factor.

Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary. *IUE-CWA*, 238 F.R.D. at 598.

Here, there is no suggestion of fraud or collusion. This is a class and collective action based upon an alleged practice of failing to pay employees for time they were required to be at work prior to their shift starting that violated the FLSA and Michigan law and which affected approximately 199 people. With this settlement, Defendants created a settlement fund of $125,000 to pay the claims of those people for their work hours during the settlement period. Furthermore, the parties and their counsel have civilly but vigorously disagreed over issues in dispute in the Litigation prior to settling the case. Like in *IUE-CWA*, the "process was entirely at arm's length, with each party representing and pursuing its own interests, and exercising independent judgment." *Id.* at 599. Moreover, "if the settlement agreement itself is fair, reasonable and adequate, then the court may assume that the negotiations were proper and free of collusion." *Id.* (citations omitted). Thus, since the Settlement Agreement in this matter is indeed fair, reasonable and adequate, there is a presumption that negotiations were properly conducted at "arm's length."

### 2.   The complexity/delay/expense factor.

Whatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation.   *Id.* at 596.   Absent settlement, all members of the Class would be subject to the uncertainty, risk, and delay attendant to continued litigation which ultimately might leave them with nothing. *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 836 (E.D. Mich. 2008). Further, because the disputed issues in this case are so complex, continued litigation will require large expenditures of time and resources of the parties and the Court.   Thus, this factor also warrants final approval of the Settlement Agreement, which will provide prompt payment to the participating Class members.

### 3.   The discovery/evidence factor.

The parties have conducted their own internal investigations, interviews, and other information gathering, informal discovery, as well as a Rule 30(b)(6) deposition in order to inform their litigation risk assessment and their settlement discussions.   The parties recognized, after this extensive discovery into the relevant facts regarding Defendants' pre-shift practices and thoroughly researching the law relevant to the Litigation, that risks and uncertainties exist for both sides in continued litigation.   After approximately a year and half of vigorous negotiations, litigation and discovery, the parties have gathered "information sufficient to permit their informed assessment of the litigation and settlement, sufficient to inform the

Court that their dispute is genuine and based on good-faith, albeit diametrically-opposed, legal positions, and sufficient to support the conclusion that the settlement is reasonable and desirable from all perspectives." *See id.* at 838.

### 4. The likelihood of success factor.

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631. In assessing the parties' legal dispute, a district court's task "is not to decide whether one side is right or even whether one side has the better of these arguments . . . [t]he question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.* at 632.

In assessing the parties' dispute, and weighing the likelihood of Plaintiffs' success on the merits if the litigation continues against the benefits to Plaintiffs from the settlement, the ultimate question for this Court is only whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued. *IUE-CWA,* 238 F.R.D. at 595 (*citing Cardizem,* 218 F.R.D. at 522). It is neither required nor is it possible for a district court to determine that the proposed settlement is the fairest possible resolution of the claims of every individual class member; rather, the court need only determine whether the settlement taken as a whole, is fair, adequate, and reasonable. *IUE-CWA*, 238 F.R.D. at 595 (*citing Clark Equip.,* 803 F.2d at 878). Although assessing

11

this factor requires some evaluation of the merits of the dispute, this Court need not resolve the dispute and must refrain from reaching conclusions on issues which have not been fully litigated. *IUE-CWA*, 238 F.R.D. at 595 (citation omitted).

Here, consideration of this factor leads to the conclusion that there is indeed a legitimate dispute and that resolution of this lawsuit by the settlement better serves the Class than continued litigation. The core of the parties' dispute is whether Defendants were required to pay their employees for the pre-shift time and whether not paying those employees was an intentional violation. The parties, having researched the relevant facts and law, have opposing views on these questions. The parties recognize, however, that the relevant facts and law provide the foundation for substantial and good-faith arguments that may be advanced in favor of each side. In addition, the parties recognize that continued litigation would be a "zero sum" undertaking, in which one party is likely to achieve complete victory while the opposing party experiences complete defeat, because the parties' core positions are irreconcilable.

Thus, since the dispute is genuine, the outcome of continued litigation is uncertain, and continued litigation would carry substantial risks for both sides, these circumstances militate in favor of a settlement that ends uncertainty, eliminates risk, and provides significant benefits to each side and to the Class as a whole. Again, in this context the Court need not and should not decide the merits

of the case or resolve the unsettled legal questions it presents.  *IUE-CWA*, 238 F.R.D. at 595.  It is sufficient to warrant final approval of the settlement after determining that the Settlement Agreement is a rational and salutary resolution of contested, uncertain, and risky litigation.

### 5.   The judgment of counsel factor.

The judgment of the parties' counsel that the settlement is in the best interest of the settling parties "is entitled to significant weight, and supports the fairness of the class settlement."  *See id.* at 597; *see also Cardizem,* 218 F.R.D. at 525 ("in approving a proposed settlement, the court also considers the opinion of experienced counsel as to the merits of the settlement").  Here, the parties' counsel share the view that the settlement is fair, reasonable, and adequate.  Thus, this factor too supports final approval of the Settlement Agreement.

### 6.   The fairness factor.

District courts may scrutinize settlements to ensure that absent class members have not "lost out in favor of attorneys and named class members."  *IUE-CWA*, 238 F.R.D. at 598 (citations omitted).  There is nothing in the parties' Settlement Agreement that improperly benefits attorneys or favors the class representative.  To the contrary, the Settlement Agreement is even-handed in its treatment of Class Members, does not improperly favor the class representatives, and reasonably provides for class counsel's fees and expenses.

Christopher Slaght, Jeffrey Megie, Jr, and Steven Smith are given no improper consideration or advantage under the Settlement Agreement.  Rather, they will each receive $3,333.33 to compensate them for their role as the class representatives in the Litigation. All other Class Members will receive an individually calculated pro rata share of the Net Settlement Fund based on their hourly rate or over overtime rate for time worked over 40 hours per week for the additional 5 to 15 minutes worked each day for the pre-shift meetings he/she worked as a Shift Lead, Technician, Operator, Laminator, Hi Lo Driver and General Laborer during the settlement period.

In addition, the Settlement Agreement provides for class counsel fees based on 33 1/3% of the total Settlement Fund or Enhanced Settlement Fund, subject to Court approval.  Granted, it is possible that a portion of the $125,000 settlement fund will go unclaimed and will revert to Defendants, if Class Members who do not opt-out decide not to cash their checks within the proscribed time.  That is immaterial, however, given that class members' "right to share the harvest of the lawsuit upon proof of their identity, *whether or not they exercise it*, is a benefit in the fund created by the efforts of class representatives and their counsel." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016) (emphasis in original), quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480; 100 S.Ct. 745 (1980).

Thus, the treatment of the class members, the class representative, and class counsel under the Settlement Agreement is fair, reasonable, and adequate. This factor, too, favors settlement.

### 7.    The public interest factor.

The settlement of what likely would otherwise be protracted and sharply-contested "zero sum" litigation is in the public interest. The settlement benefits the parties and simultaneously serves the public interest in achieving certainty for Class Members and for productive restaurants that provide services in Michigan. It also advances the public interest to resolve disputes in federal courts with the maximum possible expediency and efficiency. *See Cardizem*, 218 F.R.D. at 530 ("[T]here is a strong public interest in encouraging the settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources"). The "public interest" factor, therefore, also favors approval of the Settlement.

### B.    <u>The Reaction of the Class Members Supports Approval</u>

The reaction of the class also supports approval. Of the 199 eligible settlement Class Members only two (2) have submitted opt-out forms requesting to be excluded from the settlement. Importantly, there are zero (0) objections. (*Exhibit B*, Gomez Decl. at ¶¶ 10-11).

### C.   The Court Should Grant Class Certification for Settlement Purposes

For settlement purposes only, the parties have agreed that the Court may make preliminary findings and enter an order granting provisional certification of the Class.  "The validity of use of a temporary settlement class is not usually questioned."  Conte & Newberg, 4 *Newberg on Class Actions*, § 11:22 (4th Ed. 2002).  The *Manual for Complex Litigation* (Fourth) § 21.612 explains the benefits of settlement classes:

> Settlement classes – cases certified as class actions solely for settlement – can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved and, in Rule 23(b)(3) actions, to withdraw from the settlement if too many class members opt out.  An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

Prior to granting approval of a class action settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *Id.* at § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  A class may be certified under Rule 23(a) only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  *In re American Medical Systems,*

*Inc.*, 75 F.3d 1069, 1079-1083 (6th Cir. 1996).   In addition, a plaintiff must demonstrate one of the three provisions of Rule 23(b).   *Amchem*, 521 U.S. at 614; *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 n.6 (6th Cir. 1998).   Here, Plaintiff seeks certification of the Class under Rule 23(b)(3), which requires that common questions of law or fact predominate, and that maintaining the suit as a class action is superior to other methods of adjudication.   *See Amchem*, 521 U.S. at 615-16; *In re American Medical Systems*, 75 F.3d at 1084.   In this case, the Class meets all of the applicable certification requirements.   For settlement purposes only, the Settlement Class is submitted for certification under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.   The Class is defined in the Settlement Agreement and also appears in § II(A), *supra*.

## 1.   The Rule 23(a) factors are met.

### a. The Class is sufficiently numerous, and joinder is impracticable.

Numerosity is met where "the class is so numerous that joinder of all members is impracticable."   Fed. R. Civ. P. 23(a)(1).   There is no strict numerical test for determining impracticability of joinder.   *Senter v. General Motors Corp.,* 532 F.2d 511, 523 n.24 (6th Cir. 1976).   Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."   *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980).

The Sixth Circuit has certified classes of 35 employees. *See Afro Am. Patrolmens League v. Duck,* 503 F.2d 294, 298 (6th Cir. 1974). Indeed, the modern trend for meeting the numerosity factor is to require at a minimum "between 21 and 40" class members. *See Rodriguez v. Berrybrook Farms, Inc.,* 672 F. Supp. 1009, 1013 (W.D. Mich. 1987). "Although not an absolute rule, it generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." *Crawford v. TRW Auto. U.S. LLC*, 2007 U.S. Dist. LEXIS 19946, *8 (E.D. Mich. Mar. 21, 2007) (citations omitted).

Here, the Class includes 199 people from across the state of Michigan. This Class undoubtedly is sufficiently numerous, rendering joinder impracticable.

### b. The Class shares common issues of law and fact.

The commonality requirement of Rule 23(a) requires Plaintiff to show "there are questions of law or fact common to the issue." Fed. R. Civ. P. 23(a)(2). A common question of law *or* fact will suffice. *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007); *Reese v. CNH America LLC,* 227 F.R.D. 483, 487 (E.D. Mich. 2005). Plaintiff is also required to "show that class members have suffered the same injury." *In re Whirlpool Corp. Front– Loading Washer Products Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) (citations omitted). Thus, Plaintiffs' "claims must depend upon a common contention ... of such a nature that it is capable of class wide resolution—which means that

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *See id.* (citations omitted).

The commonality inquiry "focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *Id.* (citations omitted); *see also Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 422 (6th Cir. 1998) ("The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members"); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (finding that a common question satisfies the commonality test only if it advances the litigation).

The commonality element has been satisfied in this case.   The class proposed consists of every shift lead, technician, operator, laminator, Hi-Lo Driver and general Laborer who worked for Defendants during the settlement period and who allegedly were required to work between 5 to 15 minutes before their shift began in violation of 29 U.S.C. §201 *et seq.*   Thus, in this case, the central issues common to every member of the Class are whether Defendants required them to show up to work between 5 to 15 minutes before their shift began, whether Defendant was required to pay them for their pre-shift time, and whether not doing so was an intentional violation of the FLSA.

19

### c. Mr. Slaght, Mr. Megie Jr. and Mr. Smith's claims are typical of the Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*In re American Medical Systems,* 75 F.3d at 1082 (footnote and quotation omitted). The typicality requirement focuses on the type of injury suffered by the class members and the interests of the various class members. *See Senter*, 532 F.2d at 525.

Mr. Slaght, Mr. Megie Jr., and Mr. Smith and the proposed Class allege that Defendants required them to be at work 5 to 15 minutes before their shift began and were not paid for this time in violation of 29 U.S.C. §201 *et seq.* As a result of this alleged conduct, Mr. Slaght, Mr. Megie Jr. and Mr. Smith and the proposed Class are entitled to the difference between the wage they should have received and the wage they actually received. Accordingly, Mr. Slaght, Mr. Megie Jr. and Mr. Smith, by pursuing their own claims, will advance the interests of the proposed Class in satisfaction of Rule 23(a)(3).

### d. Mr. Slaght, Mr. Megie, Jr. and Mr. Smith and Class Counsel are adequate representatives.

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525 (citation omitted); *Cross,* 553 F.2d at 1031 (Rule 23(a)(4) tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent"). The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members.

In the case at hand, Mr. Slaght, Mr. Megie Jr. and Mr. Smith's interests are entirely representative of and consistent with the interests of the proposed Class – all were required by Defendants to show up to work 5 to 15 minutes before their shift began and their pursuit of this matter demonstrates that they have been and will remain zealous advocates for the Class. Similarly, proposed class counsel, Kevin J. Stoops of Sommers Schwartz, P.C., has extensive experience in wage and

hour litigation under the FLSA. Moreover, Brian Delekta of Delekta & Delekta P.C. is experienced in wage and hour litigation under the FLSA and is experienced in other employment law litigation. Please see Mr. Stoops' declaration at **Exhibit C**. Accordingly, the parties agree that Mr. Stoops and Mr. Delekta will adequately represent the proposed Class.

### 2. The Rule 23(b)(3) factors are met.

#### a. A class action is a superior method of adjudicating this dispute.

Federal Rule of Civil Procedure 23(b)(3) requires that the court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The rule is designed to "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citation omitted).

To determine whether a class action is the superior method for fair and efficient adjudication, a district court should consider the difficulties of managing a class action. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007). A district court should also compare other means of disposing of the suit to determine if a class action "is sufficiently effective to justify the expenditure of the judicial

22

time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court."  7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1779 (3rd Ed. 2010); *see also Newberg, supra,* § 4:27 (identifying possible alternatives to the class action device such as "joinder, intervention, consolidation, a test case, and an administrative proceeding").   Additionally, a district court should consider the value of individual damage awards, as small awards weigh in favor of class suits.  *Beattie,* 511 F.3d at 567; *see also Amchem,* 521 U.S. at 616 (explaining that when individual class members have large stakes in the outcome and the ability to pursue a remedy alone, their individual interests weigh against a Rule 23(b)(3) action).

"[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers,* 501 F.3d at 619; *see also Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988) (acknowledging an "increasingly insistent need" to certify class actions for lawsuits arising out of a "single course of conduct").   Where many individual inquiries are necessary, a class action is not a superior form of adjudication.  *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011). However, where a threshold issue is common to all class members, class litigation is greatly preferred.  *Daffin v. Ford Motor Co.,* 458 F.3d 549, 554 (6th Cir. 2006)

("Permitting individual owners and lessees of 1999 or 2000 Villagers to litigate their cases is a vastly inferior method of adjudication when compared to determining threshold issues of contract interpretation that apply equally to the whole class").

This case is particularly well-suited for class treatment. The claims of Mr. Slaght, Mr. Megie Jr., Mr. Smith and the proposed Class involve identical alleged violations of the FLSA. Absent a class action, most members of the Class – most of whom have claims worth less than $500 - would find the cost of litigating the claims to be prohibitive. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (a class action is the superior method of proceeding when it allows the plaintiffs to pool claims that would be uneconomical to litigate individually). It is thus unlikely that individuals would invest the time and expense necessary to seek relief through individual litigation.

Moreover, because the action will now settle, the Court need not be concerned with issues of manageability related to trial. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. A class action is the superior method of resolving claims if it will "achieve economies of time, effort, and expense, and promote… uniformity of decision as to persons similarly

situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615. Accordingly, a class action is the superior method of adjudicating and settling this case.

### b. Common questions of law or fact predominate over questions affecting only individuals.

The focus of the predominance requirement is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Id.* at 623. "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (citations omitted).

In this case, the central issues common to every member of the Class are whether Defendants required them to show up to work between 5 to 15 minutes before their shift began, whether Defendant was required to pay them for their pre-shift time, and whether not doing so was an intentional violation of the FLSA. Thus, the common issues resulting from Defendants' alleged conduct predominate over any individual issues that may exist, and the proposed Class should be certified.

### D.   CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action upon motion under Fed. Civ. P. 54(d)(2) and 23(h).

The Sixth Circuit requires that awards of attorneys' fees by federal courts in common fund cases be reasonable under the circumstances. *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 U.S. Dist. LEXIS 20440, *50 (E.D. Mich. Dec. 20, 1996) (*citing Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). Both the lodestar and the percentage-of-the-fund method of calculating attorneys' fees are accepted in this Circuit. *Id*. at 517.

1. **The Court Should Adopt the Percentage Approach to Award Attorneys' Fees.**

In the Sixth Circuit, district courts have the discretion "to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and the particular circumstances of the actual cases pending before the Court" using either the percentage or lodestar approach. *In re Cardinal Health Inc. Sec. Litig*., 528 F. Supp. 2d 752, 761 (S.D. Ohio 2007) (*citing Bowling v. Pfizer, Inc*., 102 F.3d 777, 779 (6th Cir. 1996)).

"The Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in [common fund] cases.'" *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008) (*quoting Rawlings,* 9 F.3d at 515; *In re Sulzer Orthopedics, Inc.,* 398 F.3d 778, 780 (6th Cir. 2005)). Likewise, in district courts, "the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 U.S. Dist. LEXIS 7829, *34 (S.D. Ohio Jan. 26, 2011).

When using the percentage-of-the-fund method, the district court must analyze and weigh the six factors described by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc*., 508 F. 2d 1188 (6th Cir. 1974). *In re Cardinal Health*, 528 F. Supp. 2d at 761.

Here, the percentage of fund method is the proper method for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible.

Here, Plaintiff requests that the Court adopt the percentage of fund approach to award Class Counsel's attorneys' fees in the amount of $41,666.67, or 33 1/3% of the Gross Settlement Amount.

## 2. The *Ramey* Factors Weigh in Favor of Awarding the Requested Fees.

In reviewing the reasonableness of the requested award, the Sixth Circuit requires district courts to consider six factors:

> (1) the value of the benefits rendered to the class;
> (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
> (3) whether the services were undertaken on a contingent fee basis;
> (4) the value of the services on an hourly basis [the lodestar cross-check];
> (5) the complexity of the litigation; and
> (6) the professional skill and standing of counsel on both sides.

*Ramey*, 508 F. 2d at 1194-97. "A district court may choose to consider only the factors that are relevant to the settlement at hand." *Snook v. Valley Ob-Gyn Clinic, P.C.*, 2015 U.S. Dist. LEXIS 2989, *2 (E.D. Mich. Jan. 12, 2015). Nevertheless, each of these factors weighs in favor of awarding the requested attorneys' fees.

### a. The settlement provides a substantial benefit to the class

Class Counsel's work resulted in a Gross Settlement Amount of $125,000. Of this amount, $73,332.61 is available to the Named Plaintiffs, and the participating settlement Class Members. The settlement funds will be allocated in a way that fairly approximated the damages Plaintiffs allege they and other Class Members are owed as a result of Defendants' pre-shift activities. To calculate individual payments, the parties through a comprehensive evaluation of each Class Member's pay records during the class period were able to identify the amount of money allegedly owed to each Class Member for off-the-clock time worked by the respective job classifications (Shift leads, Technicians, Operators, Laminators, Hi Lo Drivers and General Laborers) during the class period. Those amounts will then be prorated by the amount in the settlement fund and number of participating Class Members to determine how much each Class Member receives. (Doc. 26-1, Settlement Agreement Exhibit A at ¶¶ C).

Further, the Settlement provides immediate relief to Class Members, eliminating additional risks they would otherwise face if the litigation continued to

summary judgment on the merits, trial, and appeal. Absent settlement, the parties would have engaged in additional and extensive discovery (including written discovery and multiple depositions of opt-in plaintiffs and management witnesses), as well as additional motion practice (decertification of the FLSA collective, Rule 23 certification, and summary judgment). While Plaintiffs maintain they would ultimately prevail on these issues, they recognize the inherent risk of litigation. By agreeing to the Settlement, those risks are eliminated and participating class members are guaranteed to receive an excellent recovery now, rather than to possibly receive one years from now.

### b. Society's stake in rewarding attorneys who produce the benefits to the class in order to maintain an incentive to others.

Society's stake in rewarding attorneys who bring class action wage-and-hour cases favors the requested award. *See Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887, *14 (S.D. Ohio June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage-and-hour cases, as these are frequently complex matters."); *Coulter-Owens v. Rodale, Inc.*, 2016 U.S. Dist. LEXIS 134243, *12 (E.D. Mich. Sept. 29, 2016) ("Society has an interest in incentivizing the plaintiffs' bar to investigate and litigate such cases through the award of contingent fees.") (*citing In re Delphi Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 503 (E.D. Mich. 2008)) ("Encouraging qualified

counsel to bring inherently difficult and risky but beneficial class actions like this benefits society.") (citation omitted).

Here, Class Counsel recovered wages for 199 of Defendants' current and former Shift Leads, Technicians, Operators, Laminators, Hi Lo Drivers and General Laborers. Without this lawsuit, very few of these individuals would have known about their potential claims, let alone had the motivation or resources to pursue them. *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, *29 (S.D. Ohio May 30, 2012) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own."). Moreover, the requested award—33 1/3% of the settlement—is well within the range approved by Courts in this district, but not so high that it would constitute a windfall. *Gonter v. Hunt Valve Co., Inc*., 510 F.3d 610, 616 (6th Cir. 2007). This is especially true in light of the extensive work performed by Class Counsel during the litigation, along with the additional work Class Counsel has committed to perform to ensure that participating Plaintiffs and Class Members receive the settlement payments and tax documents, receive reissued checks as necessary, and are aware of the settlement check void date. (Stoops Decl. ¶¶ 22, 31). Accordingly, this factor supports the requested fees.

### c. Class Counsel undertook considerable risk of nonpayment in litigating this case on a contingency basis.

Despite the risks associated with prosecuting this case, Class Counsel took this case solely on a contingency fee basis and were prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. (***Exhibit C***, Stoops Decl. ¶ 29). Class Counsel's investigation began with interviews of a handful of former and current employees. At this time, most of the critical records were in Defendants' possession, and Class Counsel had to proceed in reliance of employees' recollections of other employees' job duties and of the pre-shift activities. (*Id.* at ¶¶ 13-15).

Even assuming liability could be established, Class Counsel incurred the risk that Plaintiffs' damages would be too low to offset the costs advanced to investigate and prosecute this matter. Class Counsel will have committed approximately 150 hours through the course of this litigation, a significant expenditure of time, all of which was devoted on a contingency basis with no guarantee of payment. (*Id.* at ¶¶ 31-34). These hours were spent performing the following tasks that were necessary and integral to the successful resolution of this case, including but not limited to: (1) investigating and researching the potential claims; (2) interviewing the Named Plaintiffs and other employees regarding their claims; (3) drafting the various initiating documents and the Complaint; (4) briefing conditional certification; (5) reviewing responsive discovery documents;

(6) taking a deposition; (7) performing complex damage calculations; (8) negotiating, drafting, editing, and filing the Settlement Agreement and settlement approval papers; and (9) communicating with Plaintiff and Class Members during the Settlement Notice period. (*Id.* at ¶¶ 13-16). These hours were reasonable and necessary given the breadth and scope of the issues in this case, as well as the dedicated efforts of counsel to obtain relief for the class.

In addition, Class Counsel will continue to represent the Plaintiffs and Class Members throughout the next few months and expend more time to ensure that the settlement funds and tax documents are disseminated in a timely fashion and mailed to correct addresses, and to answer questions about the settlement. (*Id.* at ¶ 34). This factor thus weighs in favor of awarding the requested fee. *See Gentrup*, 2011 U.S. Dist. LEXIS 67887 at *14 (finding that plaintiffs' counsel made "significant investments of time and [had] advanced costs but [had] received no compensation in this matter" weighed in favor of the requested fee).

### d. The lodestar cross-check supports approval of the requested fees.

As a way to "cross check" the fourth *Ramey* factor, the value of the services rendered, district courts calculate the lodestar figure and compare it with the amount requested under the percentage approach. *See In re Cardinal Health*, 528 F. Supp. 2d at 761. The number of hours expended "creating, protecting, or preserving the fund recovered" is then multiplied by a "reasonable hourly rate" to

produce a lodestar figure. *Id*. The reasonable hourly rate is "is determined by reference to the prevailing market rates in the relevant community." *Lowther*, 2012 U.S. Dist. LEXIS 181476 at *13. The appropriate market to determine the reasonable hourly rate is that of similar types of cases, in terms of both size and complexity. *Id*. (*quoting McHugh v. Olympia Entm't, Inc*., 37 F. App'x 730, 740 (6th Cir. 2002)). The FLSA is an area of the law practiced by a small subset of the bar, with even fewer attorneys capable of handling a case of this size and complexity, against a company with vast resources. Accordingly, in calculating lodestar, Class Counsel utilized the rates they would charge in their home courts and for paying clients.

The lodestar figure may be increased by "multiplying it by a factor it deems reasonable (the 'lodestar multiplier')." *In re Cardinal Health*, 528 F. Supp. 2d at 761. A variety of factors are examined in determining the appropriate multiplier, including, "the nature of the case, the market for such legal service, the risk involved and the results achieved." *Id*. The multiplier is designed to reward Class Counsel for taking on more risk, providing "superior quality" representation, or achieving a greater settlement. *Id*. Courts frequently award multipliers between one and four. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (*quoting* 3 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 14.03 at 14-5 (3d ed. 1992)). The same is true in this district.

*See e.g.*, *Coulter-Owens v. Rodale, Inc.*, 2016 U.S. Dist. LEXIS 134243, *18 (E.D. Mich. Sept. 29, 2016) (awarding a lodestar cross-check multiplier of about 2.05 times the estimated hourly billing amount of $546,719 supplied by Plaintiffs' Counsel); *New York State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. 226, 244 (E.D. Mich. 2016) ("The requested fee of $21 million represents a multiplier of 1.9, which the Court finds to be well within an acceptable range."); *see also Lowther*, 2012 U.S. Dist. LEXIS 181476 at *19 (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (3.06 multiplier)); *Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 18838, at *8 (S.D. Ohio Feb. 28, 2008) ("The multiplier [of 3.04] is fully warranted given the complexity of the case, the attendant risks, the size of the settlement recovered, and class counsels' continuing obligations to the class, and it is well within the range of multipliers awarded in similar litigation."); *In re Cardinal Health*, 528 F. Supp. 2d at 767 (lodestar multiplier of 6.0, noting that the typical lodestar multiplier in large class actions "ranges from 1.3 to 4.5").

Class Counsel's total lodestar through November 6, 2017 equals $52,451.50. (***Exhibit C***, Stoops Decl. ¶ 33). Thus, there is no lodestar multiplier. In fact, the requested attorney's fees of $41,666.67 results in a negative lodestar multiplier to Class Counsel. The reasonableness of the fee award is further evidenced by the fact that Class Counsel will expend additional time and resources over the next few months in order to oversee the disbursement of the settlement funds. Specifically,

it is anticipated that Class Counsel will incur additional lodestar in a range of $4,000 to $7,500. (*Id.* at ¶ 34) Taking all of this into consideration, the lodestar cross-check thus illustrates that Class Counsel's fee award is well within the range of reasonableness, particularly for a case in which the Class reaction has been positive and considering the time and labor expended, the scope of the litigation, the risks, the monetary results achieved for the class, and the amount of the fees in proportion to the monetary settlement.

### e. The complexity of this litigation weighs in favor of the requested award.

Wage-and-hour collective and class actions are "frequently complex matters." *Gentrup*, 2011 U.S. Dist. LEXIS 67887 at *14.). Furthermore, because the disputed issues in this FLSA matter are so complex, continued litigation will require large expenditures of time and resources of the parties and the Court. Moreover, Plaintiffs faced several procedural hurdles that may have prevented them from even getting to the merits: obtaining Rule 23 certification and withstanding motions for class and collective decertification. Resolving the merits, damages, and procedural issues would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

### f. Class Counsel's skill supports approval.

The skill and efficiency of attorneys is evidenced by their local reputations as well as their experience and expertise in the area. *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991). In assessing the skill of Class Counsel, it is also important to assess the quality of defense counsel as well, to determine the quality of service Class Counsel rendered. *See Lowther*, 2012 U.S. Dist. LEXIS 181476 at *11 (*citing Smillie v. Park Chem. Co*., 710 F. 2d 271, 275 (6th Cir. 1983)). The Court preliminarily approved attorneys Kevin J. Stoops of Sommers Schwartz, P.C. and Brian Delekta of Delekta & Delekta P.C. as Class Counsel in this matter. (Doc. 26 at Pg ID 307). As discussed in Mr. Stoops' declaration, Class Counsel is qualified, experienced, and has substantial credentials representing plaintiffs, particularly employees, in class and collective action litigation. (***Exhibit C***, Stoops Decl. ¶¶ 7-9). Likewise, Defendants are represented by experienced and skilled counsel at McDonald Hopkins, PLC, itself a qualified and experienced firm with substantial credentials representing defendants in employment and class action litigation.[1] Accordingly, the professional skill and standing of counsel on both sides is substantial and this factor supports approval of the requested fee award.

---

[1] *See e.g.,* https://mcdonaldhopkins.com/Expertise/Labor-and-Employment/Labor-and-employment-litigation.

### g. The requested fee award is comparable to fee awards in similar cases.

Lastly, although not one of the *Ramey* factors, comparing the fees requested in this case to the fees awarded in similar cases further evidences the reasonableness of Class Counsel's request for an award of 33 1/3% of the settlement fund. *See, e.g., Bessey v. Packerland Plainwell, Inc.*, 2007 U.S. Dist. LEXIS 79606 (W.D. Mich. October 26, 2007) (approving attorneys' fees of 33% in wage-and-hour class and collective action where total settlement was approximately $668,000 and the approved fees and costs were approximately $220,000); *Rotuna v. W. Customer Mgmt. Grp*., LLC, 2010 U.S. Dist. LEXIS 58912, *19-20 (N.D. Ohio June 15, 2010) (approving attorneys' fees of 33% of the settlement amount in wage-and-hour class and collective action involving 1,778 employees); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 218 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir. 2001) (approving an award of $1.4 million in fees, representing 34% of the total amount of the common fund, and noting that it is within the 20% to 50% range of reasonableness).

### E. CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF NECESSARY EXPENSES SHOULD BE APPROVED

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig*., 166 F.

Supp. 2d 72, 108 (D. N.J. 2001)); *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003).

Class Counsel requests reimbursement of expenses in an amount not to exceed $10,000.72[2] to cover costs associated with court fees, Settlement Administrator fees, legal research, deposition transcripts, photocopies, PACER fees, and postage. (***Exhibit C***, Stoops Decl. ¶¶ 38-44). These expenses are reasonable given the full scope of the litigation, are documented in Class Counsel's business records, are reasonable in relation to the Settlement Fund, and should be awarded. *Id.* Moreover, they are consistent with awards in other class action cases. *See In re Packaged Ice Antitrust Litig.*, 2012 U.S. Dist. LEXIS 162459, *47-48 (E.D. Mich. Nov. 13, 2012) (approving costs to plaintiff's counsel related to travel, telephone, printing, postage, federal express, Westlaw and IT services); *see also In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002) (awarding approximately $1.7 million to plaintiffs' counsel as reimbursement for out-of-pocket expenses advanced during the litigation including "expert witnesses; computerized research; court reporting services; travel expenses; copy, telephone and facsimile expenses; mediation; and class notification.").

---

[2] Class Counsel will provide final cost's figures at the Final Approval Hearing.

**F.** **THE SETTLEMENT ALSO WARRANTS APPROVAL UNDER FLSA**

The FLSA was enacted for the purpose of protecting all covered workers from the inequities in the workplace that result from the differences in bargaining power between employers and employees. *See Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 739; 101 S. Ct. 1437 (1981). The goal of the FLSA was to ensure that each employee covered by the Act received "[a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Id.* at 739 (internal citation and quotations omitted). The FLSA, therefore, provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee … affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be...." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 65 S. Ct. 895 (1945). The two circumstances in which the FLSA may be compromised are claims that are supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(b), and when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982).

The latter exception applies to this case. The Court's role in this situation is comparable to that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23. *Collins v. Sanderson Farms, Inc.,* 568 F.Supp.2d 714, 719 (E.D.La.2008). "In essence, the Court must ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Id.* (citing 29 U.S.C. §§ 206, 207.) The existence of a question as to the plaintiffs' entitlement to compensation under the FLSA serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. Thus, to ensure that the plaintiffs have not abandoned their rights under the Act, "the court must determine whether such a question, or bona fide dispute, exists." *Crawford v. Lexington–Fayette Urban County Gov't,* 2008 U.S. Dist. LEXIS 90070, *12-13 (E.D. Ky. Oct. 23, 2008).

The Settlement Agreement in this case resolves a "bona fide dispute" under the FLSA and contains terms that seek to avoid further actions under the FLSA and the Michigan law. Both sides aggressively advocated their positions during the Litigation, which clearly demonstrated that the legal and factual issues presented in this action did not necessarily favor either side. This bona fide dispute justifies settlement in this matter. Moreover, for all the foregoing reasons discussed in the

context of Rule 23 standards, the Settlement Agreement is a fair and reasonable compromise and should be approved under the appropriate FLSA standards.

## IV.   CONCLUSION

Plaintiffs, Christopher Slaght, Jeffrey Megie, Jr., and Steven Smith, respectfully requests that the Court enter the proposed Final Approval Order attached as *Exhibit A*, during the November 20, 2017 hearing.

Dated:  November 6, 2017

Respectfully submitted,
SOMMERS SCHWARTZ, P.C.

/s/*Kevin J. Stoops*
Kevin Stoops (P64371)
Jesse L. Young (P72614)
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com
jyoung@sommerspc.com

/s/*Brian Delekta*
Brian J. Delekta (P73052)
80880 Main St., Box 595
Memphis, MI 48041
(810) 392-3834
*Class Counsel*

## CERTIFICATE OF SERVICE

I certify that on November 6, 2017, I electronically filed the forgoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kevin Stoops*
Kevin J. Stoops (P64371)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com